| | |
|---|---|
| STEPHEN HURLEY,<br>MICHAEL WOOD,<br>RANDY CURRIE,<br>FRANCIS TALORICCO, JR., and<br>RENEE DOUGHERTY,<br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>BMW OF NORTH AMERICA, LLC,<br>　　　　　Defendant. | CIVIL ACTION<br><br><br><br>NO.　18-5320 |

DuBois, J.                                                                                              April 2, 2020

## M E M O R A N D U M

### I.    INTRODUCTION

This case arises out of alleged defects in defendant, BMW of North America, LLC's N63 engine that caused excessive consumption of engine oil.  Plaintiffs, Stephen Hurley, Michael Wood, Randy Currie, Francis Taloricco, Jr., and Renee Dougherty allege breaches of express and implied warranties, and violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1, *et seq.*  Presently before the Court is defendant's Motion to Dismiss First Amended Complaint and/or, in the Alternative, To Sever (Doc. No. 14, filed March 6, 2019).  For the reasons that follow, the Motion is granted in part and denied in part.

### II.    BACKGROUND

The facts as alleged in the Amended Complaint are as follows.  In 2008, defendant introduced a V8, twin-turbocharged engine referred to as the "N63."  Am. Compl. ¶ 62.  The N63 engine was placed in certain vehicles manufactured and sold by defendant in the 2009

through 2014 vehicle model years.  *Id.*  Each of plaintiffs' vehicles was equipped with the N63 engine.  *Id.* ¶ 64.

Plaintiffs allege that defendant knew of a defect in the N63 engine that caused excessive engine oil consumption as early as 2008.  *Id.* ¶ 93.  This problem in the N63 was reported to defendant by some purchasers of BMW automobiles after release of the engine in 2009, but the alleged defect was not disclosed to all purchasers by defendant.  *Id.* ¶¶ 65, 67, 71.  Rather, in June of 2013, defendant issued a technical service bulletin which changed the engine oil consumption specifications for N63 vehicles and instructed service technicians to add engine oil to such vehicles.  *Id.* ¶¶ 78-80.

Plaintiff Michael Wood purchased new 2012 BMW X5 XDrive 50i from defendant's authorized dealer in Doylestown, Pennsylvania, on October 7, 2011 for $73,138.87.  *Id.* ¶¶ 19-20.  "Beginning in 2012," Wood observed that his vehicle "consumed an excessive amount of engine oil."  *Id.* ¶ 21.  Wood notified defendant's authorized dealer of the problem in May of 2012, but was told that the vehicle's "oil consumption was normal."  *Id.* ¶ 23.

Plaintiff Renee Dougherty purchased a new 2012 BMW X5 XDrive 50i from defendant's authorized dealer in Scranton, Pennsylvania, on November 30, 2011 for $77,866.40.  *Id.* ¶¶ 45-46.  "Several months after purchasing" the vehicle, Dougherty "observed that it consumed an excessive amount of engine oil."  *Id.* ¶ 47.  Dougherty complained to an authorized dealer but was told that the "oil consumption was normal."  *Id.* ¶¶ 48-49.

Plaintiff Francis Taloricco, Jr. purchased a new 2012 BMW 5 Series 550xi from defendant's authorized dealer in Fort Washington, Pennsylvania on April 16, 2012 for $69,746.00.  *Id.* ¶¶ 37-38.  After purchasing the vehicle, Taloricco "observed that it consumed an excessive amount of engine oil."  *Id.* ¶ 39.  Taloricco complained to defendant's authorized

dealer, but was told that the vehicle's "oil consumption was normal." *Id.* ¶¶ 40-41.

Plaintiff Stephen Hurley purchased used 2009 BMW 750i from defendant's authorized dealer in in West Chester, Pennsylvania, on April 30, 2013 for $47,901.47. *Id.* ¶¶ 11-12. "Soon after purchasing" the vehicle, Hurley "observed that it consumed an excessive amount of engine oil." *Id.* ¶ 13. Hurley complained to defendant's authorized dealer during the warranty period but was told that the vehicle's excessive oil consumption was "normal." *Id.* ¶ 15.

Plaintiff Randy Currie purchased a used 2011 BMW 5 Series 550xi from defendant's authorized dealer in West Chester, Pennsylvania, on April 30, 2013 for $50,022.00. *Id.* ¶¶ 29-30. "Soon after purchasing" the vehicle, Currie observed that it "consumed an excessive amount of engine oil." *Id.* ¶ 31. Currie complained to defendant's authorized dealer, but was told that there was "nothing wrong" with the car and the oil consumption was "normal." *Id.* ¶¶ 32-33.

Each plaintiff alleges that he or she was required to add engine oil between the recommended oil change intervals "in order to prevent their vehicles' engines from failing." *Id.* ¶¶ 16, 26, 34, 42, 50.

Under the New Vehicle Limited Warranty that accompanied the sale of plaintiffs' vehicles, defendant warranted that it would repair or replace components found to be defective in material or workmanship for four years or 50,000 miles. *Id.* ¶¶ 54-55. Each plaintiff alleges that he or she complained to an authorized dealer about the excessive consumption of engine oil during the warranty period but repairs were not "offered or recommended." *Id.* ¶¶ 14-15, 22-23, 32-33, 39-41, 48-49.

On September 18, 2015, a nationwide class action was filed against defendant in the District of New Jersey for defendant's failure to repair vehicles equipped with defective N63 engine. *See Bang v. BMW of N. Am., LLC*, No. CV 15-6945 (D.N.J.). The class action was

settled on September 11, 2018.  However, plaintiffs, who were members of the class, opted out of the settlement, and filed a group action in this Court on December 10, 2018.  On February 14, 2019, plaintiffs filed a First Amended Complaint.

On March 6, 2019, defendant filed a Motion to Dismiss First Amended Complaint and/or in the Alternative, to Sever.  Plaintiffs responded on April 3, 2019.  On April 17, 2019, defendant filed a Reply.  The Motion is thus ripe for review.

## III.  LEGAL STANDARD

Defendant argues under Federal Rules of Civil Procedure 12(b)(1) and (6) that the Court lacks subject matter jurisdiction and that plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted.  In the alternative, defendant argues that plaintiffs are improperly joined and should be severed pursuant to Federal Rule of Civil Procedure 21.

### A.  Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of jurisdiction over the subject matter" of a case.  The plaintiff has the burden of establishing subject matter jurisdiction.  *See Carpet Group Int'l v. Oriental Rug Imp. Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  "Without jurisdiction the court cannot proceed at all in any case."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citation omitted).

In evaluating a Rule 12(b)(1) motion, the Court must first determine whether the motion "presents a 'facial' attack or a 'factual' attack."  *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018).  A facial attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court."  *Id.*  When ruling on a facial attack, the Court "considers only the complaint, viewing it in the light most favorable to the plaintiff."  *Id.*

4

By contrast, a factual attack is an argument that challenges the "factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). When ruling on a factual attack, the Court weighs the evidence and must satisfy itself as to the existence of its power to hear the case. *Id.* In this case, defendant presents a facial attack.

### B. Rule 12(b)(6): Failure to State a Claim

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint. *Liou v. Le Reve Rittenhouse Spa, LLC*, No. CV 18-5279, 2019 WL 1405846, at *2 (E.D. Pa. Mar. 28, 2019). To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility of a plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a

curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Nevertheless, a court may dismiss a claim with prejudice based on "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

## C. Severance Under Rule 21

Federal Rule of Civil Procedure 21 empowers the Court to sever a party or claims against a party. The rule provides: "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. "A district court has broad discretion in deciding whether to sever a party pursuant to Federal Rule of Civil Procedure 21." *Boyer v. Johnson Matthey, Inc.*, No. 02–8382, 2004 WL 835082, at *1 (E.D. Pa. Apr. 16, 2004). Rule 21 is "most commonly invoked to sever parties improperly joined under Rule 20." *Norwood Co. v. RLI Ins. Co.*, No. 01–6153, 2002 WL 523946, at *1 (E.D. Pa. Apr. 4, 2002).

Federal Rule of Civil Procedure 20(a)(1) governs joinder of plaintiffs. That rule provides that joinder of plaintiffs is only proper where:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

*Id.* As a general matter, joinder of related claims and parties is encouraged. *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009). Nonetheless, joinder is only proper where both elements of Rule 20(a) are met. *Cooper v. Fitzgerald*, 266 F.R.D. 86, 88 (E.D. Pa. 2010). The determination of whether claims arise out of the same "transaction or occurrence" is a flexible one, and courts

generally apply a "case-by-case approach" in making that assessment. *Miller v. Hygrade Food Prods. Corp.*, 202 F.R.D. 142, 144 (E.D. Pa. 2001). The "law or fact" element requires only that the claims against the parties share one common question of law or fact and is a "very low threshold." *Id.* at 145 (citation omitted).

## IV. DISCUSSION

### A. Subject Matter Jurisdiction

#### i. Diversity Jurisdiction

Diversity jurisdiction requires complete diversity of citizenship among the parties and that the amount-in-controversy exceed $75,000. 28 U.S.C. § 1332(a). In this case, there is no dispute that the parties are diverse, but defendant challenges whether the amount-in-controversy has been sufficiently pled.

"A plaintiff asserting diversity jurisdiction bears the burden of demonstrating that the amount in controversy exceeds $75,000." *In re Paulsboro Derailment Cases*, 704 Fed.Appx. 78, 84 (3d Cir. 2017). However, "[t]he burden is not heavy," *id.*, and "the sum claimed by the plaintiff controls if the claim is apparently made in good faith," *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). Accordingly, in order to dismiss a complaint for failing to plead damages in excess of the jurisdictional amount, "[i]t must appear to a legal certainty that the claim is really for less that the jurisdictional amount." *Id.* at 289.

Defendant argues that plaintiffs asserting federal jurisdiction in any "automobile warranty case" must plead the diminished value of their vehicles, citing the Third Circuit decision in *Samuel-Bassett*. Def.'s Mot. Dismiss 7. In *Samuel-Bassett*, the Third Circuit adopted specific pleading standards for establishing federal jurisdiction under the MMWA. The *Samuel-Bassett* court held that, in order to properly plead the required $50,000 amount-in-controversy under the

MMWA, plaintiffs "must allege the cost of the replacement vehicle, minus both the present value of the allegedly defective vehicle and the value that the plaintiff received from the allegedly defective vehicle." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 402 (3d Cir. 2004).

Defendant's reliance on *Samuel-Bassett* to contest diversity jurisdiction is misplaced. That decision and the precedent that supported it were focused exclusively on establishing jurisdiction under the MMWA.[1] Moreover, courts in this circuit have held that, when a plaintiff claims an engine defect and fraudulent concealment of the defect, "the vehicle's entire value is at issue." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 287 (E.D. Pa. 2003) (citing *McLaughlin v. Volkswagen of America, Inc.*, No. 00-3294, 2000 WL 1793071, at *3 (E.D. Pa. 2000)). In such cases, a "jury may award at least double or treble punitive damages." *Id.*

Plaintiffs allege that they paid between $47,901.47 and $77,866.40 for their vehicles and seek refund of the full contract price and punitive damages. Based on those allegations, defendant has not shown to a legal certainty that each plaintiff's claim falls below the $75,000 required to establish diversity jurisdiction. Thus, the Court concludes that it has subject matter jurisdiction over plaintiffs' claims on the present state of the record. This ruling is without prejudice to defendant's right to raise the issue after completion of discovery by motion for summary judgment and/or at trial if warranted by the facts and applicable law as stated in this Memorandum. *See Manuel v. NRA Group LLC*, 722 F. App'x 141, 145 n.6 (3d Cir. 2018) ("[O]bjections that relate to subject matter jurisdiction may be raised at any time") (internal quotation omitted).

---

[1] The Court agrees with defendant that, under *Samuel-Bassett*, plaintiffs have not pled sufficient facts to satisfy the MMWA's amount-in-controversy requirement and thus concludes that it does not have an independent basis for federal jurisdiction under that statute. However, the Court may exercise supplemental jurisdiction over plaintiffs' MMWA claims, and it does so. 28 U.S.C. § 1367(a); *see also Pierre v. Planet Automotive, Inc.*, 193 F.Supp.3d 157, 171-73 (E.D.N.Y. 2016) (concluding that the MMWA's amount-in-controversy requirement does not negate the court's authority to exercise supplemental jurisdiction).

*ii.   Standing Under Article III of the United States Constitution*

Defendant contends that plaintiffs lack standing because they have failed to allege sufficient loss or injury.  Def.'s Mot. Dismiss 9.  According to defendant, plaintiffs' alleged damages amount to mere inconvenience in having to frequently add engine oil to their vehicles and speculation regarding the failure of the engines.  *Id.*  The Court disagrees.

In order for a federal court to have jurisdiction over a claim, the plaintiff must have standing under Article III of the United States Constitution.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Standing under Article III requires that (1) the plaintiff have suffered "an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of," i.e. "the injury must be fairly traceable to the challenged action of the defendant"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* at 560–61 (citations and quotation marks omitted).

Plaintiffs allege "increased maintenance costs" and loss of value in their vehicles.  Am. Compl. ¶ 96.  Each plaintiff also alleges out-of-pocket costs resulting from the addition of engine oil between the recommended oil change intervals.  Actual economic injury in the form of out-of-pocket costs and "diminished resale value" is sufficient to establish injury in fact.  *See Bang v. BMW of North America, LLC*, No. 15-6945, 2016 WL 7042071, at *4 (D.N.J. Dec. 1, 2016). The Court concludes that plaintiffs have satisfied Article III's requirement of injury in fact on the present state of the record.  This ruling is without prejudice to defendant's right to raise the issue after completion of discovery by motion for summary judgment and/or at trial if warranted by the facts and applicable law as stated in this Memorandum.  *See Blunt v. Lower Merion School*

*Dist.*, 767 F.3d 247, 280 (3d Cir. 2014) ("[T]he jurisdictional issue of standing can be raised at any time.") (quoting *Center For Biological Diversity v. Kempthorne*, 588 F.3d 701, 707 (9th Cir. 2009)).

## B. Failure to State a Claim

### i. Economic Loss Doctrine Bars Plaintiffs' UTPCPL Claims

Plaintiffs allege that defendant's conduct violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 *et seq.* In response, defendant claims that plaintiffs' UTPCPL claims are barred by the economic loss doctrine. Def.'s Mot. Dismiss 13. According to defendant, because plaintiffs' relationship with defendant is "defined and governed by contract (i.e. BMW NA's express, limited warranty)," any economic recovery plaintiffs are entitled to arises from that contract. *Id.* at 14. Plaintiffs respond that the economic loss doctrine does not apply to UTPCPL claims, Pls.' Opp'n at 18, citing the Pennsylvania Superior Court decision in *Knight v. Springfield Hyundai* for support, 81 A.3d 940, 952 (Pa. Super. Ct. 2013).

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002). In *Werwinski v. Ford Motor Co.*, the U.S. Court of Appeals for the Third Circuit affirmed the application of the economic loss doctrine to bar UTPCPL claims, holding that the doctrine bars claims for intentional fraud where the "fraud claims…are intertwined with contract claims" and "the plaintiff can be made whole under contract law." *Id.* at 678, 680. Following the Third Circuit decision in *Werwinski*, however, the Pennsylvania Superior Court held in *Knight v. Springfield Hyundai*, that the economic loss doctrine does not bar claims under the UTPCPL because they are "statutory claims…and do not sound in

negligence." 81 A.3d at 952.

Though courts in this Circuit are divided over whether to follow *Werwinksi* or *Knight*, this Court has held that *Knight* does not provide "persuasive evidence of a change in Pennsylvania law." *Powell v. Saint Joseph's Univ.*, No. 17-cv-4438, 2018 WL 994478, at *10 (E.D. Pa. Feb. 16, 2018) (DuBois, J.). Thus, the Court will continue to follow the ruling in *Werwinski* that the economic loss doctrine bars claims under the UTPCPL.

Accordingly, the question for the Court is whether plaintiffs' UTPCPL claims are intertwined with their breach of warranty claims. *See Werwinski*, 286 F.3d at 678. Plaintiffs contend that their UTPCPL claims and warranty claims are distinct because defendant's "duty to disclose" arose by statute rather than by contract. Pls.' Opp'n at 20. The Court disagrees. Plaintiffs' UTPCPL claims amount to allegations of "fraudulent representations concerning a party's performance of a contract," and therefore they are "interwoven" with the terms of the contract. *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F.Supp.2d 504, 519 (E.D. Pa. 2012) (DuBois, J.). As in *Werwinski*, plaintiffs allege only economic loss and advance a fraud claim regarding the concealment of a defect that is tied to their claim that defendant was required to fix the defect under the terms of their warranty. *See Werwinski v. Ford Motor Co.*, No. 00–943, 2000 WL 1201576 at *5 (E.D. Pa. Aug. 15, 2000). The Court thus concludes that plaintiffs' UTPCPL claims are barred under the economic loss doctrine.[2]

### ii. Breach of Express Warranty

Defendant contends that plaintiffs have not identified the warranty at issue and therefore fail to state a claim for breach of express warranty. Def.'s Mot. Dismiss 15. Defendant

---

[2] Accordingly, the Court need not consider defendant's additional arguments that plaintiffs' UTPCPL claims are barred by the gist of the action doctrine or that plaintiffs fail to properly allege a UTPCPL violation by neglecting to plead the elements of common law fraud.

emphasizes that the Amended Complaint alleges breach of two express warranties—a "New Vehicle Limited Warranty and Certified Pre-Owned Warranty," but does not specify the terms of the Certified Pre-Owned Warranty or state which vehicles were covered by it. *Id.* at 18.

Plaintiffs' Amended Complaint alleges that "all Plaintiffs relied upon Defendant's representations regarding Defendant's New Vehicle Limited Warranty that accompanied the sale of their vehicles," under which "Defendant promised to repair or replace components found to be defective in material or workmanship during the 4-year / 50,000-mile following such vehicle delivery to consumer." Am. Compl. ¶¶ 54-55. Plaintiffs subsequently clarified in their response to defendant's Motion that "the warranty accompanying the sale of all new vehicles also applies to subsequent purchasers of the vehicles so long as warranty claims are made during the initial warranty period." Pls.' Opp'n at 13 n.5. The Amended Complaint further alleges that each plaintiff sought repair pursuant to their warranties during the warranty period. Am. Compl. ¶¶ 14, 22, 32, 40, 48.

The Court concludes that the New Vehicle Limited Warranty claims are adequately pled in the Amended Complaint.[3] On the other hand, the Certified Pre-Owned Warranty is barely mentioned. Nevertheless, the Court denies defendant's Motion to Dismiss plaintiffs' express warranty claims—claims based on the New Vehicle Limited Warranty and Certified Pre-Owned Warranty—for failure to state a claim. Plaintiffs' allegations are sufficient to put defendant on notice of the nature of plaintiffs' claims under both express warranties. However, plaintiffs will

---

[3] Defendant contends that, to the extent that plaintiff Hurley relied on the New Vehicle Limited Warranty in seeking repairs, his breach of express warranty claim should be dismissed because he purchased his used vehicle outside of the four-year warranty period. Def.'s Reply 12. However, the only support for this argument is a "Warranty Vehicle Inquiry" that appears to have been obtained by defendant in January of 2019. Def.'s Mot. Dismiss, Ex. A. The Court will not consider the "Warranty Vehicle Inquiry" in ruling on this Motion because plaintiffs did not reference it or rely on it when framing their complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

be required to be much more specific in disclosing their allegations and evidence with respect to both express warranties, particularly the Certified Pre-Owned Warranty, in their discovery responses. Any remaining express warranty issues may be addressed at the summary judgment stage.

### iii. Implied Warranty of Merchantability

Defendant also argues that plaintiffs fail to sufficiently allege breach of the implied warranty of merchantability. Def.'s Mot. Dismiss 29. Specifically, defendant claims that plaintiffs have not alleged that the subject vehicles were not fit for the ordinary purposes for which they are used. *Id.* at 30.

To be considered merchantable, goods must be "fit for the ordinary purposes for which such goods are used." 13 Pa. Conns. Stat. § 2314(b)(3). As applied to automobiles, "the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects. Thus, where a car can provide safe, reliable transportation, it is generally considered merchantable." *Hornberger v. General Motors Corp.*, 929 F. Supp. 884, 888 (E.D. Pa. 1996).

The Court concludes that plaintiffs have sufficiently alleged a claim for breach of the implied warranty of merchantability. As other courts have recognized, vehicles subject to engine failure as a result of excessive oil consumption "cannot be said to be merchantable." *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1339 (C.D. Cal. 2013). Plaintiffs have plausibly alleged that the vehicles were not in a safe condition or substantially free of defects.

### iv. Magnuson-Moss Warranty Act

Because defendant contends that there are no viable claims for breach of express or implied warranties, defendant also argues that "plaintiffs' derivative MMWA claim must also be

dismissed." Def.'s Mot. Dismiss 31; *see* 15 U.S.C. § 2310(d)(1) (providing a cause of action for failure "to comply with any obligation…under a written warranty, implied warranty, or service contract"). The Court has previously concluded that all plaintiffs have sufficiently stated a claim for breach of express and implied warranties. For those same reasons, the Court concludes that plaintiffs have likewise stated a claim under the MMWA.

### C. Timeliness of Plaintiffs' Claims

#### *i. Breach of Express Warranty Claims*

Defendant argues that plaintiffs' breach of express warranty and MMWA claims (Counts I and II) should be dismissed because the statute of limitations had run before plaintiffs filed their original complaint on December 10, 2018. Def.'s Mot. Dismiss 18, 31. The Court concludes that this issue cannot be resolved on a motion to dismiss.

The running of the statute of limitations "cannot typically form the basis of a 12(b)(6) dismissal." *Arrington v. Terrace*, No. 16-2599, 2016 WL 5899925, at *5 (E.D. Pa. Oct. 7, 2016). The Third Circuit has held that a limitations defense may only be raised by a motion under Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (internal citations omitted). The untimeliness of plaintiffs' claims must be "apparent on the face of the complaint." *Id.* at 135 (internal quotation omitted).

Claims for breach of express warranty are subject to a four-year statute of limitations. *See Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642, 645 (Pa. Super. Ct. 1999); *see also* 13 Pa. Conns. Stat. § 2725(b). In cases arising out of automobile defects, Pennsylvania courts have held that this "statute of limitations period does not begin until a defect in the vehicle was or should have been discovered." *Id.*

Defendant advances a variety of such accrual dates. First, defendant argues that plaintiffs were on notice of their claims when they were denied warranty coverage by their dealers, but acknowledges that such dates cannot be gleaned from the complaint for all plaintiffs. Def.'s Mot. Dismiss 19. Alternatively, defendant proposes a June of 2013 accrual date—when BMW issued "a Service Information Bulletin 'changing engine oil consumption specification for N63 vehicles." *Id.* On this issue, defendant also points out that plaintiffs have described the oil consumption issue as a topic of conversation online as early as 2011. *Id.*

Accepting any of defendant's suggested accrual dates would require the Court to ignore plaintiffs' allegations regarding defendant's effort to conceal the true nature of the defect in the engine. Plaintiffs allege that when they first observed the excessive oil consumption and sought repairs, defendant's dealers stated that the oil consumption was normal—despite defendant's alleged knowledge of a defect in the N63 engine since at least 2008. Am. Compl. ¶¶ 15, 23, 33, 41, 49, 93. Plaintiffs further allege that the June 2013 service bulletin was part of defendant's "campaign to conceal the oil consumption defect and represent it as a normal feature of BMW vehicles." *Id.* ¶ 80. Considering the alleged effort to hide the defect in the N63 engine, the question of when plaintiffs should have discovered the defect so as to trigger the running of the limitations period on their express warranty claims cannot be resolved by motion to dismiss.

*ii. Plaintiffs' Breach of Implied Warranty Claims*

The implied warranty of merchantability is subject to a four-year statute of limitations that—because the warranty is one of present condition—begins to run at the date of vehicle delivery. *See Lowe v. Volkswagen of Am., Inc.*, 879 F. Supp. 28, 30 (E.D. Pa. 1995). For used vehicles, the Court considers the date of original delivery to the first purchaser as the relevant date of delivery. *See Webb v. Volvo Cars of N.A., LLC*, No. 13-2394, 2018 WL 1470470, at *8

(E.D. Pa. Mar. 26, 2018) ("[T]he statute of limitations for breach of implied warranty is four years from the date the seller tenders the goods to the original purchaser.").

In contrast to plaintiffs' express warranty and MMWA claims, the date of accrual for plaintiffs' implied warranty claims is apparent from the face of the Amended Complaint. Plaintiffs Wood, Dougherty, and Taloricco pled specific dates of delivery for their new vehicles—October 7, 2011, November 30, 2011, and April 16, 2012 respectively—that cause their current claims to fall outside the four-year statute of limitations. Am. Compl. ¶¶ 19, 37, 45. Plaintiffs Hurley and Currie purchased used vehicles and did not plead dates of original delivery, but even using the dates of purchase of their vehicles, in April of 2013, as the date of accrual, their claims are untimely. The Court must therefore consider the applicability of the tolling doctrines raised by plaintiffs: equitable estoppel based on fraudulent concealment, the discovery rule, and class action tolling.

## 1. Fraudulent Concealment

Though the parties discuss equitable estoppel and fraudulent concealment as separate bases for tolling, Pennsylvania courts have adopted a single standard for estoppel based on fraudulent concealment. *See Fine v. Checcio*, 582 Pa. 253, 270-71 (Pa. 2005) ("The doctrine [of fraudulent concealment] is based on a theory of estoppel"); *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 96 (Pa. 1964) ("In order for the doctrine of [equitable] estoppel to be applied in bar of the statute of limitations, fraud or concealment must necessarily be established.").

Equitable estoppel based on fraudulent concealment is applicable where "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry." *Meehan v. Archdiocese of Philadelphia*, 870 A.2d 912, 921 (Pa. Super. Ct. 2005) (quoting *Kingston Coal Company v. Felton Min. Co., Inc.*, 456 Pa. Super. 270, 283 (Pa. Super.

Ct. 1997).   Under this doctrine, "the statute [of limitations] is tolled until plaintiffs knew or using reasonable diligence should have known of the claim." *Vernau v. Vic's Market, Inc.*, 896 F.2d 43, 46 (3d Cir. 1990) (internal quotations omitted).   Because the benefits of tolling under fraudulent concealment end on the date of discovery, courts in this Circuit have held that plaintiffs must plead a specific tolling date and the circumstances of discovery.   *See In re Niaspan Antitrust Litigation*, 42 F.Supp.3d 735, 748-49 (E.D. Pa. 2014) (DuBois, J.).   The Court concludes that, because plaintiffs have not provided any dates of discovery, they are not entitled to equitable tolling for fraudulent concealment on the present state of the record.

### 2.  Discovery Rule

The discovery rule tolls the statute of limitations "whenever the plaintiff, despite the exercise of reasonable diligence, is unable to know of the existence of the injury and its cause." *Bohus v. Beloff*, 950 F.2d 919, 926 (3d Cir. 1991).   "The statute of limitations begins to run as soon as the plaintiff has discovered or, exercising reasonable diligence, should have discovered the injury and its cause." *Id.* at 925.   As with fraudulent concealment, where the discovery rule tolls the statute of limitations until a certain date of discovery, a plaintiff must "allege[ ] the [specific] date on which she learned of her injury." *See In re Processed Egg Prods. Antitrust Litg.*, 931 F. Supp. 2d 654, 658 (E.D. Pa. 2013).   As discussed above, the Court concludes that plaintiffs have failed to plead specific tolling dates and thus are not entitled to tolling under the discovery rule on the present state of the record.

### 3.  Class Action Tolling

Plaintiffs argue that, under class action tolling, their claims were tolled from the date the *Bang* class action was filed until plaintiffs opted out.   Defendant contends that cross-jurisdictional class action tolling is not permitted in Pennsylvania.   Def.'s Reply 15.   The Court

agrees.

When proceeding under diversity jurisdiction, this Court applies the law of Pennsylvania with regard to tolling. *See Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 552 (3d Cir. 1985) ("Federal courts sitting in diversity cases must apply the substantive law of the states in which they sit…and statutes of limitations are considered substantive.") (citations omitted). Pennsylvania courts have held that the "filing of a class action in another state does not toll the statute of limitations as to a subsequent action filed in Pennsylvania's state court system." *Ravitch v. Pricewaterhouse*, 793 A.2d 939, 945 (Pa. Super. Ct. 2002), *appeal denied*, 572 Pa. 758 (2003). At least one federal court has held that this bar still applies if the initial class action was filed in a federal court. *See In re New England Mut. Life Ins. Co. Sales Practices Litg.*, No. 02–12083, 2003 WL 25953191, at *8 (D. Mass. May 20, 2003) (applying Pennsylvania's bar on cross-jurisdictional class action tolling in a case involving an initial federal class action). Based on this authority, this Court concludes that cross-jurisdictional class action tolling is inapplicable in this case.

The *Bang* class action from which plaintiffs opted out was filed in the District Court for the District of New Jersey. Thus, under Pennsylvania law, which this Court must apply, the *Bang* case did not toll the applicable statute of limitations.

### iii. Plaintiffs' MMWA Claims

As the MMWA "does not contain an express limitations period, federal courts apply the most analogous state statute of limitation." *Lowe v. Volkswagen of America, Inc.*, 879 F.Supp. 28, 30 (E.D. Pa. 1995). In this circuit, courts have applied the Pennsylvania Uniform Commercial Code's four-year statute of limitations for breach of warranty claims. *Id.* Further, because claims for breach of express or implied warranties under the MMWA are derived from

underlying state law claims, a court's "disposition of the state law warranty claims determines the disposition of the Magnuson–Moss Act claims." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008). Thus, if the statute of limitations is deemed to have run for the plaintiff's state law claims, the derivative claims under the MMWA must be dismissed as well. *See Rawls v. Associated Materials*, LLC, No. 10–cv–01272, 2011 WL 3297622, at **3-4 (S.D.W.Va. Aug. 1, 2011).

To the extent plaintiffs seek to pursue claims for breach of implied warranty under the MMWA, the Court concludes that such claims are untimely. However, as discussed above, the timelines of claims for breach of express warranties—including for those brought under the MMWA—cannot be resolved at this stage of the proceeding.

### iv. Conclusion

The Court thus denies defendant's Motion to the extent it seeks dismissal of plaintiffs' express warranty claims under state law and the MMWA in Counts I and II as untimely. The Court grants defendant's Motion to the extent it seeks dismissal of plaintiffs' implied warranty claims under state law and the MMWA in Counts I and III as untimely and dismisses those claims without prejudice to plaintiffs' right to file a second amended complaint within fifteen (15) days if warranted by the facts and law as set forth in this memorandum. The Court concludes that further amendment of the First Amended Complaint—so as to assert breach of implied warranty claims and the applicability of equitable estoppel based on fraudulent concealment and the discovery rule—might not be futile on the present state of the record.

### D. Improper Joinder

Defendant argues that plaintiffs' claims are improperly joined and should be severed pursuant to Federal Rule of Civil Procedure 21. Def.'s Mot. Dismiss 32. Defendant emphasizes

that plaintiffs purchased vehicles of different years and models, "have vastly divergent purchase, maintenance, and usage histories," and involve different interactions with different dealerships. *Id.* at 33. Defendant argues that, regardless of whether plaintiffs suffered similar harms from the same product, plaintiffs' claims do not arise out of the same transaction or occurrence. The Court disagrees.

Plaintiffs in this case have alleged more than merely a shared harm from a defective product. Not only has each plaintiff "experienced excessive engine oil consumption as a result of the same defective engine," each also presented his or her car to defendant's authorized dealer and was told that the excessive engine oil consumption did not warrant repairs despite defendant's alleged awareness that the engines were defective. Pls.' Opp'n 27. Courts have upheld the joinder of such claims regardless of whether the plaintiffs individually purchased their vehicles and sought repairs from different dealers. *See, e.g.*, *El Fakih v. Nissan N. Am., Inc.*, No. 18-60638, 2018 WL 4193675, at *4 (S.D. Fla. July 26, 2018) (finding proper joinder where all plaintiffs' claims arose from sale of defective vehicles and failed attempts to honor the warranty).

Courts presiding over nearly identical actions brought by *Bang* opt-outs are divided over whether joinder of such plaintiffs is proper. Two have rejected motions to sever, reasoning that joinder was proper in light of the shared engine defect and breach of warranty claims. *See Schneider et al. v. BMW of North America, LLC*, 1:18-cv-12239-IT, 2019 WL 4771567, at *5 (D. Mass. Sept. 27, 2019) ("Plaintiffs' claims all arise out the same alleged facts"); *Loy et al v. BMW of North America, LLC et al*, No. 19-00184, 2019 WL 6250844, at *1 (E.D. Mo. Nov. 22, 2019) (concluding that plaintiffs "seek relief arising out of the same transactions or occurrences"). Two others have granted motions to sever, but have emphasized issues with judicial economy

arising from the larger number of plaintiffs in those cases. *See Nasima Sarwar, et al. v. BMW of North America*, No. 18-16750 (D.N.J., Nov. 27, 2019) (severing claims of forty joined plaintiffs); *Cheryl Walters. et al. v. BMW of North America*, No. 8:18-cv-02875-TPB-CPT (M.D. Fla., November 22, 2019) (severing claims of forty-one joined plaintiffs).[4]

No similar problems with large numbers of joined plaintiffs present themselves in this case with only five plaintiffs. The Court concludes that joinder was proper as plaintiffs' claims arise out of the same transaction, occurrence, or series of transactions or occurrences. The Court further concludes that plaintiffs' claims share common questions of law and fact, including whether defects in the engine resulted in excessive oil consumption, whether and when defendant became aware of the defect, and whether defendant deliberately concealed the defect. That part of defendant's Motion seeking severance of plaintiffs' claims is thus denied.

## V.     CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss is granted in part and denied in part. The Court denies without prejudice that part of defendant's Motion seeking dismissal of plaintiffs' claims for lack of standing and absence of subject matter jurisdiction. The Court grants that part of defendant's Motion seeking dismissal of plaintiffs' UTPCPL claim in Count IV of the First Amended Complaint and dismisses that claim with prejudice. The Court denies without prejudice that part of defendant's Motion seeking dismissal of plaintiffs' express warranty claims brought under state law and the MMWA in Counts I and II of the First Amended Complaint. The Court grants that part of defendant's Motion seeking dismissal of plaintiffs' implied warranty claims brought under state law and the MMWA in Counts I and III

---

[4] Defendant has also submitted notice of a third court to sever claims in a similar post-*Bang* case, *Johns-Pratt, et al. v. BMW of North America, LLC, et al*, No. 18-1799 (D. Conn. Aug. 30, 2019). The Court notes that the order in *Johns-Pratt* was issued without explanation.

of the First Amended Complaint and dismisses those claims without prejudice to plaintiffs' right to file a second amended complaint within fifteen (15) days asserting those claims if warranted by the facts and applicable law as set forth in this Memorandum. The Court denies that part of defendant's Motion seeking severance of plaintiffs' claims. Defendant's Motion to Dismiss is denied in all other respects.

An appropriate order follows.