IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN HURLEY, MICHAEL WOOD, FRANCIS TALORICCO, JR. and RENEE DOUGHERTY | : : : : | CIVIL ACTION |
| v. | : : | |
| BMW OF NORTH AMERICA, LLC | : | NO. 18-5320 |

## MEMORANDUM OPINION

Savage, J.                                              December 8, 2021

In this breach of warranty action alleging that defects in its N63 engine caused excessive oil consumption, defendant BMW of North American, LLC ("BMW") moves for summary judgment. It argues that the plaintiffs' express and implied warranty claims are time-barred and that they cannot prove any defect constituting a breach of the applicable warranties. Plaintiffs counter that they instituted this action within the statute of limitations that had been tolled during the time BMW concealed the defect. They also contend that they can identify the defect causing the excessive oil consumption.

There are disputed facts regarding when the plaintiffs knew or should have known of the defect, triggering the running of the statute of limitations. From the evidence presented, a jury could find that the suit was filed within the four-year limitations period. Contrary to BMW's contention that the plaintiffs have not presented reliable evidence of a defect or that BMW concealed any defect, there is ample evidence both that there was a defect—faulty valve stem seals—and BMW concealed that defect from plaintiffs. Thus, we shall deny BMW's motion for summary judgment.

## Discussion

Plaintiffs Michael Wood, Francis Taloricco, Jr., and Renee Dougherty purchased

new vehicles on October 7, 2011, April 16, 2012, and November 30, 2011, respectively. Stephen Hurley purchased a certified preowned vehicle on April 30, 2013. The new vehicles were covered by BMW's New Vehicle Limited Warranty which warranted that BMW would repair or replace defective parts for four years or 50,000 miles, whichever occurred earlier. The used vehicle was covered by the same warranty, but the time and mileage were calculated from the date the original owner purchased it. In other words, the warranty period was extended by the time and miles remaining after the original purchaser used it. Because the warranty had expired before Hurley purchased his used vehicle, BMW issued its Certified Pre-Owned Limited Warranty, extending the expiration to March 27, 2015 or 100,000 miles, whichever occurred first.

*Statute of Limitations*

BMW argues that the plaintiffs' claims are time-barred. It is undisputed that the warranty covering each vehicle expired more than four years before suit was instituted on December 10, 2018. What is disputed is when the statute of limitations began running in each case. BMW contends that the statute of limitations accrued when each plaintiff noticed the low oil warning light illuminated. If that was when the claims accrued, the claims are barred by the statute of limitations. But, as we shall learn, that is not when the limitations period was triggered.

The low oil warning did not signal a defect. Even if it did, BMW, through its dealers, did not attribute the excess oil consumption to a defect, instead assuring the plaintiffs that it was normal.

Plaintiffs maintain that BMW knew that the cause of the excess oil consumption was faulty valve stem seals during the respective warranty periods and within the statute

of limitations, but failed to disclose it. They contend BMW knew in 2012 or 2013 that the valve stem seals were wearing down prematurely and hardening.

There is substantial evidence that BMW knew of the defect and intentionally concealed it to avoid the expense of costly repairs. BMW knew in 2010 there was a problem with excess oil consumption in the N63 engine, having received numerous complaints by 2009.[1] At that time, it did not know the cause. But, by February 2013, it knew the cause was defective valve stem seals.

On December 22, 2010, Senior Product Engineer Michael Murray reported that the "[p]resumed cause" of the oil problem was the crankcase ventilator hose.[2] Four months later, on March 11, 2011, he attributed the problem to "[p]ossible failed [t]urbos."[3]

Then, on September 23, 2011, in a Measure directed to dealers, BMW advised dealers how to diagnose and address high oil consumption complaints. It recommended that if after exhausting all efforts to locate the source of the problem, the vehicle should be fitted with a new engine.[4] BMW issued another Measure on November 13, 2012, instructing dealers to explain to customers that it was normal for turbocharged engines to

---

[1] 2009 & 2010 Oil Repair Records (attached as Ex. 5 (ECF No. 86-7) to Pls.' Mem. in Opp'n to Def's Mot. for Summ. J. & in Supp. of Pls.' Cross-Mot. for Summ. J. ["Pls.' Mem. in Opp'n] (ECF No. 86)); *Bang* Oil Repair Records (attached as Ex. 6 (ECF No. 86-8) to Pls.' Mem. in Opp'n).

[2] Report No. 36996149 (Dec. 22, 2010) (attached as Ex. 8 at 2–4 (ECF No. 86-10) to Pls.' Mem. in Opp'n); Michael Murray Deposition Transcript at 70:5–71:16 ["M. Murray Dep. Tr."] (attached as Ex. 7 (ECF No. 86-9) to Pls.' Mem. in Opp'n).

[3] Report No. 44448076 (Mar. 11, 2011) (attached as Ex. 8 at 8–10 to Pls.' Mem. in Opp'n); M. Murray Dep. Tr. at 75:24–76:9, 77:22–79:1.

[4] Measure No. US 47133153-01 (Sept. 23, 2011) (attached as Ex. 8 at 11–13 to Pls.' Mem. in Opp'n); M. Murray Dep. Tr. at 83:24–84:9, 86:10–87:7.

consume more oil and to add an extra quart of oil.[5] Finally, on February 26, 2013, Murray reported that the valve stem seals were worn, causing abnormal oil consumption. He wrote:

> **Presumed cause**
>
> | **Fault location:** | **Fault type:** |
> |---|---|
> | 11/34 Valve stem seal | Worn |

He recommended that "[i]f all other reasons for oil consumption are exhausted . . . replace the defective valve stem seals."[6]

Ignoring Murray's findings and recommendations, on March 1, 2013, BMW provided dealers talking points when addressing customers' complaints of excessive oil consumption. It instructed dealers to explain engine function and oil consumption as normal.[7] It did not disclose that the cause was defective valve stem seals. Then, on March 27, 2013, BMW advised dealers that the cause of excess oil consumption was a "[d]efect in the crankcase breather (or, in rare cases, on the piston/cylinder)." It again recommended that if after exhausting all efforts to locate the source of the problem, the vehicle should be fitted with a new engine.[8]

Concealment

---

[5] Measure No. US 52633283-02 (Nov. 13, 2012) (attached as Ex. 8 at 16–19 to Pls.' Mem. in Opp'n); M. Murray Dep. Tr. at 117:20–24, 119:5–12, 124:3–18.

[6] Report No. 53752877 (Feb. 26, 2013) (attached as Ex. 8 at 20–21 to Pls.' Mem. in Opp'n); M. Murray Dep. Tr. at 141:6–142:1, 142:4–143:21, 145: 6–24.

[7] Measure No. US 49242162-05 (Mar. 1, 2013) (attached as Ex. 8 at 22–28 to Pls.' Mem. in Opp'n); M. Murray Dep. Tr. at 153:24–154:8.

[8] Measure No. US 47133153-05 (Mar. 27, 2013) (attached as Ex. 8 at 29–33 to Pls.' Mem. in Opp'n).

A cause of action for breach of express warranty must be brought within four years from the date of delivery. *Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642, 645 (Pa. Super. Ct. 1999). When the defect is not discovered upon delivery, the statute of limitations is tolled until the plaintiff knew or should have known of the breach. *Id*. Thus, if the defendant conceals the defect, the limitations period does not start running until the plaintiff discovers it. *Vernan v. Vic's Mkt., Inc.*, 896 F.2d 43, 46 (3d Cir. 1990) (citations omitted); *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 247–48 (Pa. 2021).

Section 2725 of the Uniform Commercial Code fixes the statute of limitations for a breach of contract for sale at four years "after the cause of action has accrued." 13 PA. CONS. STAT. § 2725(a). It then establishes when the action accrues. The UCC states the following:

> (b) Accrual of cause of action.—
>
> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

*Id.* § 2725(b).

The warranties here promise future performance of the vehicles. *See Nationwide Ins. Co. v. Gen. Motors Corp./Chevrolet Motor Div.*, 625 A.2d 1172, 1176, 1178 (Pa. 1993). Hence, each plaintiff's cause of action did not accrue until the breach was or should have been discovered.

As we previously observed, BMW knew of the defect and purposefully did not disclose it, preventing the plaintiffs from asserting their warranty claims during the

warranty period. That concealment tolled the statute of limitations until the plaintiffs learned of the defect. The low oil warning light did not put the plaintiffs on notice of a defect giving rise to a breach of warranty claim. Dougherty discovered the defect in 2017 or 2018.[9] Wood, Taloricco and Hurley discovered the defect on June 5, 2018, June 8, 2018, and June 22, 2018, respectively.[10] The plaintiffs filed suit on December 10, 2018, within four years of learning that the engines were defective. To the extent the parties dispute when that plaintiffs learned of the defect, it is for a jury to determine.

## Repair Doctrine

Although the parties have not raised the repair doctrine exception for the four-year limitations period, there is evidence that may instigate its application. BMW contends the plaintiffs did not complain of excessive fuel consumption. It points to its own service records to show an absence of such complaint. The plaintiffs dispute BMW's contention. They testified in their depositions that they had raised the issue with the dealers.

It is not surprising that the dealers servicing the vehicles would not record those complaints made during the course of performing other repairs and routine service appointments. The dealers were not informed of the cause of the excess oil consumption. They, too, had been misled and BMW instructed them to tell customers the oil consumption was "normal." Consequently, because they were unaware of the

---

[9] Renee Dougherty Deposition Transcript at 19:3–9, 25:23–26:6, 29: 2–22, 37:24–38:8 (attached as Ex. M (ECF No. 83-15) to Def.'s Mot. for Summ. J. & Statement of Material Facts ["Def.'s Mot. for Summ. J."] (ECF No. 83)).

[10] Michael Wood Deposition Transcript at 49:6–15, 50:22–51: 8 (attached as Ex. E (ECF No. 83-7) to Def.'s Mot. for Summ. J.); Francis Taloricco, Jr. Deposition Transcript at 42:8–23, 49: 13–18 (attached as Ex. J (ECF No. 83-12) to Def.'s Mot. for Summ. J.); Stephen Hurley Deposition Transcript at 64:15–21, 66:15–20 (attached as Ex. A (ECF No. 83-3) to Def.'s Mot. for Summ. J.).

6

problem, the dealers may not have noted complaints because they considered the oil consumption normal.

Where the seller undertakes to make repairs to address a defect, the repair doctrine may apply. The repair doctrine, a form of estoppel, tolls the statute of limitations only where "evidence reveals that repairs were attempted; representations were made that the repairs would cure the defects; and the plaintiff relied upon such representations." *Keller*, 733 A.2d at 646 (quoting *Amodeo v. Ryan Homes, Inc.*, 595 A.2d 1232, 1237 (Pa. Super. Ct. 1991)).

The evidence, viewed in the light most favorable to the plaintiffs,[11] satisfies the three elements of the doctrine. The plaintiffs complained of high oil consumption throughout the warranty period. The dealers responded by topping the oil as the solution. The plaintiffs took their word that it was normal.

Again, the low oil warning light did not put the plaintiffs on notice of a defect giving rise to a breach of warranty claim. Only when they learned what the problem was did they know there was a defect. *See Amodeo*, 595 A.2d at 1236. That time did not come until 2017 and 2018, and plaintiffs filed suit within four years of discovering the engines were defective.

*Evidence of Defect*

BMW argues that plaintiffs have not produced evidence from which a jury could conclude that the N63 engine was defective as a result of defective valve stem seals.

---

[11] In considering a motion for summary judgment, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159–60 (3d Cir. 2003). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted).

Plaintiffs have presented expert testimony that the defective valve stem seals caused excessive oil consumption. BMW's own documents showed that it identified the source of the excess oil consumption problem as defective valve stem seals and acknowledged that it warranted corrective measures.

BMW contends it did not breach its warranties, but instead honored them. It correctly points out that the warranty only required it to correct defects in material and workmanship. It argues its obligation was limited to performing necessary repairs and replacement parts at its expense. According to BMW, it responded to every request of plaintiffs and serviced the vehicles as necessary and as warranted.

There is evidence that contradicts BMW's contention. Again, BMW's own documents reflect that it knew of the problem. Instead of correcting or replacing the defective parts (seals or engines), it concealed the defect and offered an unfounded excuse. A jury could, if it deems the evidence credible, find that the N63 engines were defective and that BMW breached its express warranty by failing to repair or replace the engines.

## Conclusion

There are disputed facts regarding when the plaintiffs learned of the defective valve stem seals, triggering the statute of limitations. There is evidence that the engines were defective and BMW failed to repair or replace the engines. Therefore, we shall deny BMW's motion for summary judgment.